United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Robert E. Tuite, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-20614-Civ-Scola |
| | ) |
| Carnival Corporation, dba | ) |
| Carnival Cruise Line, Defendant. | ) |

### Order Granting the Defendant's Motion for Summary Judgment

Plaintiff Robert E. Tuite seeks to recover damages for physical injuries he sustained while a passenger aboard one of Defendant Carnival Corporation's ships. (Compl., ECF No. 1.) Tuite complains that he suffered severe bodily harm—including a traumatic brain injury, forehead lacerations, and injuries to his shoulder, neck, knee, and back—when he tripped and fell over a raised metal threshold abutting worn carpeting in the dining area of the *Carnival Sunshine*. (*Id.* ¶ 12.) Tuite also says that as a direct result of these injuries, he contracted pneumonia. (*Id.*) His complaint is comprised of three counts: a failure-to-warn claim (count one); a negligent-maintenance claim (count two); and a general-negligence claim (count three), which is somewhat duplicative of count two. Carnival has filed a motion for summary judgment, arguing, among other things, that it is entitled to judgment in its favor on all three claims as there is no record evidence that Carnival had notice that the threshold was dangerous. (Def.'s Mot., ECF No. 26.) In opposition, Tuite submits there is overwhelming evidence establishing Carnival's notice of the hazardous threshold. (Pl.'s Resp., ECF No. 36.) Carnival has timely replied (Def.'s Reply, ECF No. 40) and the motion is ripe for review. For the reasons set forth below, the Court **grants** Carnival's motion for summary judgment on all three counts of Tuite's complaint (**ECF No. 26**).

1. **Background**[1]

Tuite was a passenger on the *Sunshine*, boarding in Charleston, South Carolina, on March 7, 2022. (Def.'s Stmt. of Facts ¶ 1, ECF No. 25, 1.) On March 10, Tuite attempted to walk towards a buffet area, on deck 9 in an area of the ship called the Lido Deck Marketplace, by traversing across a threshold from a carpeted area to a tiled area. (*Id.* ¶¶ 2, 3, 12, 13; Pl.'s Stmt. of Facts ¶ 13, ECF No. 35.) Carnival describes the "carpeted flooring" as being "secured

---

[1] Except where indicated, the facts are undisputed.

by a metal fastener to a tiled area" and references a photograph taken by Tuite's wife on the day of his fall:



(Def.'s Stmt. ¶ 3 (citing Exh. 2, ECF No. 22-2).) Another photograph, taken by ship personnel, shows the threshold from a different angle:



(*Id.*, Exh. 4, ECF No. 25-4.) Tuite complains that these pictures do not capture the height change between the metal fastener or tile and a spot on the carpet several inches from the fastener, varying between ¾ of an inch and 1 inch. (Pl.'s Stmt. ¶¶ 16, 31.) Instead, Tuite points to a photograph taken by his

expert, Frank A. Fore, viewing the threshold area from ground level and perpendicularly to Tuite's direction of travel when he fell:



(*Id.* ¶ 32 (depicting Fig. 13 from Fore's Rep., ECF No. 34-1, 41).)

In any event, as Tuite crossed the threshold on March 10, as he had at least once before without incident, his foot caught on a metal fastener bar, separating the carpeting from the tile. (Pl. Dep. at 74:14–16, ECF No. 29-1, 20; Def.'s Stmt. ¶¶ 10, 11; Pl.'s Stmt. ¶ 13–15.) Tuite recalls looking down, as or just after his foot caught, and then tipping forward, landing on his hip, shoulder, and face. (Pl. Dep. at 74:14–16; Def.'s Stmt. ¶ 13.) The severity of Tuite's injuries necessitated emergency treatment onboard the ship and then transfer by air ambulance to a hospital on land. (Pl.'s Stmt. ¶ 22.) The parties do not dispute that Tuite was not looking at the floor as he walked but was instead looking out for other people who were milling about in the busy breakfast area. (Def.'s Stmt. ¶14; Pl.'s Stmt. ¶¶ 13, 14.)

For at least three years before Tuite's fall, the carpet and tiling, including the metal transition bar between them, have been in the same configuration and condition. (Def.'s Stmt. ¶¶ 4–6, 29.) Carnival maintains that, within that timeframe, no one else has tripped on that threshold or any similar threshold in that area of the ship. (*Id.* ¶ 8.) Tuite, on the other hand, points out that at least two other passengers have tripped there: an unnamed passenger that Tuite's wife saw trip; and Mark Auerbach, the Tuites' friend and traveling companion, who also tripped as he was traversing the threshold from the carpeted side to the tile side—both occurring on March 9, the day before Tuite fell. (Pl.'s Stmt. ¶¶ 18, 19.) As to the unnamed passenger, Tuite's wife said he

appeared to stumble, but caught himself before falling, and she was unsure what caused his misstep, speculating that he might have bumped into a child. (M. Smith-Tuite Dep. 50:17–51:7, ECF No. 28-1, 14.) Auerbach says that he too tripped at the same threshold, also without falling, but that he didn't tell anybody about it. (Auerbach Dep. 27:22–28:12, ECF No. 30-1, 8.)

One of Carnival's security officers, Mrugesh Patel, testified as to investigating other trip and falls in the dining hall area, but for "different reasons," explaining, it appears, that he hadn't previously encountered an incident like the one involving Tuite's fall. (Patel Dep., 16:17–21, ECF No. 31-1, 5.) While his meaning isn't entirely clear, Patel said, in reference to the threshold, "It's the first time I see the metal strip between they are faced this and then. There is many reason and other regions that I encountered." (*Id.* at 16:25–17:3 (reproduced exactly as in original).) Sumit Kumar Ale, Carnival's assistant chief of security, testified that he was aware of many falls occurring, sometime as many as once a week or even once a day, in Lido Deck Marketplace areas, across multiple ships. (Ale Dep., 16:2–16, ECF No. 32-1, 5.) And Dr. Aleksander Duravic, the Carnival physician who ordered Tuite to be transported by emergency air transport off the ship because of the severity of his injuries, testified that, depending on various factors, he can treat as many as five ship passengers a month for fall-related injuries. (Duravic Dep., 30:6–22, ECF No. 33-1, 9.) The doctor also testified that he has most likely treated at least one other passenger, aside from Tuite, for injuries resulting from falling on the Lido deck. (*Id.* at 30:23–31:1.)

### 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

### 3. Analysis

At the heart of Tuite's complaint is his allegation that Carnival breached its duty of care based on "the hazardous change in level in walkway surface between tile and carpet which caused [his] fall." (Pl.'s Resp. at 1.) Carnival argues, however, that it is entitled to summary judgment because Tuite cannot point to any evidence that Carnival either knew or should have known of this tripping hazard. (*Id.* at 5–8.) In response, Tuite counters that Carnival's knowledge of the hazard is readily established by record evidence showing (1) the threshold area remained unchanged for three years prior to Tuite's fall; (2) numerous prior falls and near falls in the area; and (3) Carnival's failure to comply with industry safety standards for walkway surfaces. (Pl.'s Resp. at 1–2.) After careful review, the Court agrees with Carnival: under controlling Eleventh Circuit precedent, Tuite has failed to come forward with evidence from which the Court could infer that Carnival had notice of the threshold area's dangerous condition prior to his fall.

Tuite essentially seeks, not illogically, to hold Carnival liable for an allegedly hazardous condition that Carnival itself either created or maintained. Under controlling Eleventh Circuit case law, however, this is not enough. Instead, in this Circuit, "as a prerequisite to imposing liability," under federal maritime law, "the carrier [must] have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). Accordingly, "a cruise ship operator's liability hinges on whether it knew or should have known about the dangerous condition." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (cleaned up). While Tuite makes no real argument that Carnival had actual notice, both parties agree that constructive notice, in turn, may be established with evidence either (1) "that the defective condition existed for a sufficient period of

time to invite corrective measures,"; or (2) "of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Id.* (cleaned up). Without actual notice, the Eleventh Circuit's notice requirement demands evidence that a cruise ship operator "*should have* known" about the unreasonably dangerous condition before negligence liability can attach. *Id.* (emphasis added).

The Court will address Tuite's argument as to prior similar incidents first and then address his other two points—timing and industry-standard non-compliance—together, as they are interrelated.

### A. Tuite fails to present evidence of prior substantially similar incidents that would establish constructive notice.

According to Tuite, "there is ample evidence of past falls in the Lido Deck Marketplace which are substantially similar to [his] fall." (Pl.'s Resp. at 8.) In support, he points to Ale's testimony that there are frequent falls in the Lido Deck Marketplace; Dr. Duravic's testimony that he has treated other passengers who have fallen in the Lido Deck Marketplace; Auerbach's testimony that he tripped (but didn't fall) at the same threshold, the day before Tuite fell; and Tuite's wife's testimony that she saw another passenger trip and nearly fall near the threshold, also the day before Tuite fell. (Pl.'s Resp. at 8.) In his statement of facts, Tuite also mentions that Patel testified that he has investigated many falls in the dining areas of Carnival ships as well. (Pl.'s Stmt. ¶ 23.) But after careful review, the Court is not persuaded that any of this evidence establishes Carnival's constructive notice of the hazard.

To demonstrate constructive notice, a plaintiff may invoke the "substantial similarity" doctrine and "point to previous injuries or show that the defendant previously warned of the danger." *Malley v. Royal Caribbean Cruises Ltd*, 713 F. App'x 905, 908 (11th Cir. 2017); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). As both parties acknowledge, this doctrine "does not require identical circumstances," but instead "allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels*, 796 F.3d at 1287. Despite this flexibility, to qualify as "substantially similar," as Tuite concedes, the incidents must nonetheless have at least occurred under similar circumstances or share the same cause. *Roberts v. Carnival Corp.*, 21-11792, 2022 WL 2188010, at *5 (11th Cir. June 17, 2022). Importantly, the substantial similarity doctrine "requires that before evidence of prior incidents or occurrences is admitted into evidence, the proponent of such evidence," here Tuite, "must show that conditions substantially similar to the occurrence caused the prior incidents." *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1397 n. 12 (11th Cir. 1997).

With respect to the falls described by Ale, Patel, Dr. Duravic, and Tuite's wife, Tuite fails to supply any details from which the Court could possibly infer substantial similarity. *Roberts*, 2022 WL 2188010 at *5 ("[The plaintiff] offers no details as to the circumstances of those other incidents, so we cannot determine whether they were substantially similar."). Tuite describes the incidents mentioned by Ale and Dr. Duravic (and Patel) in purely generic terms as, simply, "falls in the Lido Deck Marketplace." (Pl.'s Stmt. ¶¶ 23, 26, 27.) Further, as to the trip and near fall described by Tuite's wife, she acknowledged that she could not see what caused the other passenger to trip and even speculated that he might have bumped into a child. (M. Smith-Tuite Dep. at 50:17–51:7.) Without anything more, the Court cannot conclude that Tuite's proffers of these falls, or the near fall, satisfactorily "show that conditions substantially similar to the occurrence caused the prior incidents." *Heath*, 126 F.3d at 1397 n. 12.

Nor does Tuite's proffer of Auerbach's incident salvage his allegations of a substantially similar incident. Although the same condition appears to have caused Auerbach's stumble, Auerbach never actually fell nor did he report the incident to Carnival (or anyone, apparently). (Auerbach Dep. at 27:22–28:4.) Tuite fails to provide any support for the notion that a ship operator's notice of a dangerous condition can be construed from an incident that resulted in no injury and of which, notably, the operator had no knowledge. Indeed, the Court concludes that attributing notice to Carnival, based on an incident of which it had no knowledge and which didn't even cause any harm, would make little sense. *See Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 511–12 (11th Cir. 2019) (finding a lack of constructive notice where the plaintiff failed to "identify any prior accident reports, passenger reviews or complaints, inspection reports, or other documents evidencing any actual or potential safety issues . . . on the subject vessel or other . . . vessels that would alert the cruise ship operator to any danger"). Ultimately, "[t]he mere implication of actual or constructive notice is insufficient to survive summary judgment." *Id.* at 512.

### B. Tuite's argument and evidence regarding the length of time the threshold remained allegedly noncompliant with various safety standards fails to demonstrate Carnival's constructive notice.

Tuite points to a combination of, on the one hand, safety standards that he says the threshold area violated and, on the other, the length of time the threshold was allegedly non-compliant. (Pl.'s Resp. at 5–7, 9–11.) His argument appears to be twofold: (1) evidence of the prolonged the length of time alone, in which the threshold remained in its allegedly dangerous state, is enough to

trigger Carnival's constructive notice of the hazard and (2) this evidence (that the threshold remained unchanged for at least three years prior to Tuite's fall), or other evidence, combined with the safety-standard violations also establishes Carnival's notice. (*Id.*) Based on Eleventh Circuit precedent, Tuite's arguments miss the mark on several fronts.

On the one hand, Tuite is certainly correct when he highlights the principle that a plaintiff can establish constructive notice by showing that a hazard existed "for a period of time so lengthy as to invite corrective measures." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1095 (11th Cir. 2022). But his interpretation of that principle, in applying it here, essentially guts the second part of the instruction: requiring the defective condition to not only exist for a sufficient period of time, but to also *invite corrective measures*. Instead, Tuite simply highlights (1) the numerous safety codes that his expert says are violated by the height difference between the metal threshold and part of the carpet near that threshold; (2) Carnival's frequent cleaning of the highly trafficked threshold; and (3) Carnival's security personnel's ignorance of the relevant safety regulations. (*E.g.*, Pl.'s Resp. at 6.) But none of this provides any evidence from which the Court could infer that the hazard was "reasonably detectable" so as to invite corrective measures. *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1179 (11th Cir. 2020).

In fact, Fore's own inspection and description of the area indicates just the opposite: that the hazardous nature of the threshold and its noncompliance was *not* reasonably detectable at all. For instance, the safety standards identifying specific metrics that Fore says were violated appear to address localized or abrupt changes in floor height, not changes in height that occur over a distance. In particular, for example, the Draft Passenger Vessel Accessibility Guidelines and the Standard Practice for Safe Walking Surfaces both identify "changes in levels" of between ¼ inch and ½ inch and of greater than ½ inch as requiring "bevel[ing]" or "ramp[ing]," respectively. (Fore's Rep., ECF No. 34-1, 10–11.)  As the guidelines elaborate, the former (beveling) requires a slope that is "not steeper than 1:2" and the latter (ramping) requires a "*running slope* not steeper than 1:12." (*Id.* (emphasis in original).) But even Fore is unable to demonstrate what he believes to be the noncompliance of the walkway without using somewhat technical tools: the level and ruler (as depicted in section 1, above, from Fore's figure 13) and an implement called a "contour gauge" which he uses to graphically map the floor profile (as shown below), both viewed from ground level and perpendicularly to the threshold:

 

(Fore's Rep. at 20–21, Figs. 14, 15.) As Tuite himself acknowledges, even the photographs that Carnival's security officer took "fail to even suggest a height irregularity between the two surfaces." (Pl.'s Resp. at 6.) Further, that Carnival personnel had to have seen the threshold repeatedly, as it was frequently cleaned, weighs even further against a finding of constructive notice. *See Sutton*, 774 F. App'x at 511 (noting that a ship operator's "regular inspections" weigh against a finding of constructive notice); *Tesoriero*, 965 F.3d at 1179 (noting that where there is no report of a hazard and a daily inspection policy requires personnel to report and document any damage, "[t]he lack of a report noting structural damage," "indicates that the [damaged item] was not in a condition that invited corrective measures"). In sum, Tuite fails to point to any evidence in the record that the hazardous nature of the threshold area should have been readily apparent to Carnival.

      In the end, Tuite's interpretation of this constructive-notice standard would amount to nothing more than an end run around long-standing Eleventh Circuit precedent that says notice of a defect cannot be imputed to a ship operator simply because it created or maintained a dangerous condition. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1359 (11th Cir. 1990) (reversing the district court where jury instructions could have allowed a jury to find a ship operator negligent based only its "mere creation or maintenance of a defect" without any finding of notice). Unless there is something about the hazard that should have "invited" Carnival to take corrective action, notice cannot be imputed simply by the passage of time. *See Francis v. MSC Cruises, S.A.*, 546 F. Supp. 3d 1258, 1266 (S.D. Fla. 2021) (Moreno, J.), *aff'd,* 21-12513, 2022 WL 4393188 (11th Cir. Sept. 23, 2022) ("[I]n order for the industry standards to put a defendant on notice of an alleged dangerous condition . . . a plaintiff must put forth evidence of industry standards related to the timing or frequency of a required inspection and such evidence must raise a reasonable inference that the cruise line should have known about an allegedly dangerous condition."). That is, Carnival's "[k]nowledge that the condition exists is not sufficient," instead, a "defendant must also know that

the condition is dangerous." *Malley*, 713 F. App'x at 908.

Tuite's slight twist on this argument, that constructive notice may also be proven through evidence that the allegedly dangerous condition failed to comply with industry safety standards for a lengthy period of time also fails. (Pl.'s Resp. at 9–11.) While his supposition isn't wholly unreasonable, the Court finds he has failed to show that Eleventh Circuit precedent would support his theory in this case. An expert's determination that a shipboard condition fails to comply with safety standards, no matter how long it has been in that condition, standing alone, fails to connect the noncompliance to a showing that the carrier *should have known* about the noncompliance. In other words, Tuite must still go beyond the mere fact of the alleged noncompliance and show that, again, there is something about the hazard that should have prompted Carnival to recognize and correct it. Importantly, the four cases Tuite relies on illustrate this hurdle and otherwise fail to support his position.

For example, in *Sorrels*, the only binding case Tuite cites, the Eleventh Circuit was careful not to overemphasize the significance of evidence regarding industry standards. 796 F.3d at 1282. In doing so, the court there recognized that, while "evidence of custom within a particular industry, group, or organization is *admissible* as bearing on the standard of care in determining negligence," "[c]ompliance or noncompliance with such custom," is nonetheless "not conclusive on the issue of negligence," and is instead just "one of the factors the trier of fact may consider in applying the standard of care." *Id.* (emphasis added). Also important to note is that in *Sorrels*, the court's industry-standards analysis was in response to the parties' dispute regarding the admissibility of expert-witness testimony opining on industry standards related to the slipperiness of wet walkways. Indeed, the court later separately evaluated whether the plaintiffs in that case had established notice and confined its assessment to evidence only of similar incidents and the cruise operator's posting of warning signs—omitting any mention whatsoever of noncompliance with industry standards as bearing on that issue. *Id.* at 1287–89. In sum, there is nothing from *Sorrels* that supports Tuite's theory that constructive notice can be established through showing only that industry standards were violated and that they were violated for an extended period of time.

Although not binding, the Court will nonetheless address the other three cases Tuite relies on as well. Tuite centers the majority of his argument on *Holderbaum v. Carnival Corp.*, a district court case from this district. 87 F. Supp. 3d 1345 (S.D. Fla. 2015) (Lenard, J.). In that case, the ship-passenger plaintiff sought damages for injuries she sustained when she fell down a ship stairwell after her foot got caught on a metal strip on the nosing of the top

tread. As Tuite points out, the Court there denied the defendant's motion for summary judgment, finding in favor of the plaintiff, among other things, on the notice issue. Tuite zeroes in on the *Holderbaum* court's basing its conclusion "on the prior incidents and the evidence of non-compliance with the various safety standards" to support his position. *Id.* at 1356. But finding that violations of safety standards *and* other evidence can, together, qualify as evidence sufficient to establish constructive notice is a far cry from Tuite's theory that an extended period of non-compliance with industry standards alone is sufficient. And, underscoring that point, the *Holderbaum* court went on to highlight abundant other evidence establishing the cruise ship operator's notice of the hazard: the presence of "Watch Your Step" warning signs in comparable locations on other ships of the same class; numerous other passengers on not only similar ships but also on the very same ship, who "had suffered nearly-identical accidents prior to [the p]laintiff's fall"; management committee discussions of each incident, followed by investigations, shortly after they occurred; and, after one of those accidents on a sister ship, before the plaintiff's fall, the staff captain of that ship ordered periodic checks on all stairs to immediately rectify any similar conditions. *Id.* at 1354. In light of all this other evidence, discussed in detail by the court, Tuite's theory that *Holderbaum* supports his proposition, that prolonged noncompliance with safety standards alone can establish notice, is unavailing.

*Andersen v. Royal Caribbean Cruises Ltd.* is similarly unhelpful. 543 F. Supp. 3d 1346, 1357 (S.D. Fla. 2021) (Bloom, J.). There, the district court opined that "evidence that an allegedly dangerous condition failed to comply with industry safety standards, together with other evidence of *notice*, can be used to establish constructive notice." *Id.* (emphasis added). Importantly, the "other evidence of notice" in that case included multiple crewmembers' actual knowledge that water had been puddling on a vinyl floor and their failure to caution the plaintiff passenger about the unreasonably slippery floor. This does not, as Tuite submits, amount to a finding by the court there that evidence of "non-compliance with industry standards paired with a showing of the length of time that the hazardous condition existed" can establish constructive notice. (Pl.'s Resp. at 10.) Nothing in *Andersen* supports Tuite's theory that the mere existence of a hazard for a substantial time period, without some other showing that the hazard's dangerous nature was readily apparent, amounts to "other evidence of notice."

Finally, *Bunch v. Carnival Corp.* cannot be read to support Tuite's position either. 825 F. App'x 713 (11th Cir. 2020). There the plaintiff passenger tripped and fell when her foot hit a raised, four-inch-high threshold that was camouflaged by carpeting reflected onto its shiny surface. While the court there

recognized, in passing, that non-compliance with industry standards could amount to "some evidence" of a dangerous condition, it also noted that such standards were certainly "not conclusive." *Id.* at 716. Moreover, in reversing the district court's decision to grant summary judgment in the ship operator's favor, the court in *Bunch* pointed to evidence of similar prior incidents, corrective actions, and warning signs, omitting any mention of whether the threshold complied with applicable safety standards. *Id.* at 718. Again, nothing in *Bunch*, like the other cases cited by Tuite, supports his argument that non-compliance with safety standards, simply by existing for prolonged periods of time, can alone result in a finding of constructive notice.

Given Tuite's inability to point to evidence showing that the hazardous nature of the threshold was reasonably ascertainable or to case law otherwise supporting his position, the Court finds that noncompliance with safety standards, even combined with the passage of significant time, without anything more, cannot establish Carnival's notice in this case.

### 4. Conclusion

For the foregoing reasons, the Court **grants** Carnival's motion for summary judgment on Tuite's claims. (**ECF No. 26**.) The Court declines to pass on the issue of whether the hazard posed by the threshold was open and obvious because it concludes Tuite has failed to identify evidence showing that Carnival lacked notice of the threshold's dangerousness.

The Clerk is directed to **close** this case and **deny** any pending motions **as moot**. The Clerk is further directed to **remove** this case from the Court's trial calendar.

**Done and ordered**, in Miami, Florida, on January 25, 2024.

_____
Robert N. Scola, Jr.
United States District Judge