UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 1:23-cv-20614-SCOLA/GOODMAN

ROBERT E. TUITE,

        Plaintiff,

v.

CARNIVAL CORPORATION d/b/a/
CARNIVAL CRUISE LINES,

        Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON MOTION TO TAX COSTS

Defendant Carnival Corporation ("Defendant" or "Carnival") seeks $5,653.35 in taxable costs for successfully defending against Plaintiff Robert E. Tuite's lawsuit. [ECF No. 65]. Plaintiff filed a response in opposition, and Defendant filed a reply. [ECF Nos. 69; 72]. Senior United States District Judge Robert N. Scola Jr. referred the motion to the Undersigned. [ECF No. 71].

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant** Defendant's motion **in part** and award it **$3,721.05** in taxable costs (i.e., $1,932.30 less than requested).

**I.      Background**

Plaintiff filed suit against Defendant for damages related to physical injuries he sustained while aboard one of Defendant's ships. [ECF No. 1]. Defendant filed a motion for summary judgment, and the Court granted it. [ECF Nos. 26; 62]. The judgment in favor of Defendant was entered soon after. [ECF No. 63]. As the prevailing party, Defendant filed a motion for an award of taxable costs in the amount of $5,653.35. [ECF No. 65].

In his opposition response, Plaintiff requests that the Court deny Defendant's motion concerning the costs associated with Dr. Jessica Ann Upton's deposition ($1,932.30) because the deposition was "not related to an issue which was present in the case at the time the deposition was taken." [ECF No. 69, p. 5].

**II.     Legal Standard**

Absent a federal statute, civil procedure rule, or order to the contrary, a prevailing party is entitled to an award of its costs. Fed. R. Civ. P. 54(d)(1). The prevailing party must file a bill of costs, adhering to the guidelines outlined in Local Rule 7.3(c), which specifically references 28 U.S.C. § 1920. Under § 1920, the following costs are taxable against the losing party:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

2

> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Although a prevailing party is entitled to taxable costs, the court can still exercise discretion in awarding the costs that § 1920 enumerates. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). When challenging whether costs are taxable, "the losing party bears the burden of demonstrating that a cost is not taxable, unless the knowledge regarding the proposed cost is within the exclusive knowledge of the prevailing party." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (internal citations omitted). Nevertheless, the court is still limited to taxing only those costs specifically authorized by statute. *E.E.O.C v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co.*, 482 U.S. at 445).

**III.   Analysis**

    **A.   Timeliness of Defendant's motion**

Local Rule 7.3(c) provides that a "bill of costs pursuant to 28 U.S.C. § 1920 shall be filed and served within thirty (30) days of entry of final judgment or other appealable order that gives rise to the right to tax costs under the circumstances listed in 28 U.S.C. § 1920." Here, Judge Scola entered the final judgment in favor of Defendant on February 1, 2024, and Defendant filed its motion on February 29, 2024. [ECF Nos. 63; 65]. Therefore, because the motion was filed less than thirty days from the entry of final judgment,

3

Defendant's motion is timely.

### B. Objections to Costs

Defendant seeks recovery of its deposition costs ($5,128.35), and service of process costs ($525.00). [ECF No. 65]. Plaintiff objects only to the costs associated with Dr. Upton's deposition ($1,932.30). [ECF No. 69].

"The taxation of deposition costs is authorized by § 1920(2)." *W&O, Inc.*, 213 F.3d at 620. The factual question of whether specific deposition and transcript costs are taxable depends on whether the deposition was "necessarily obtained for use in the case." *Id.* at 621; *see also Rodriguez v. Marble Care Int'l, Inc.*, 862 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012). If a deposition cost was incurred merely for convenience, to aid in thorough preparation, or for purposes of investigation only, then the cost is not recoverable. *W&O, Inc.*, 213 F.3d at 620 (internal citations omitted); *see also Rodriguez v. M.I. Quality Lawn Maint., Inc.*, No. 10-21031-CIV, 2012 WL 664275, at *4 (S.D. Fla. Feb. 9, 2012). It is the losing party's burden to show that "specific deposition costs . . . [are] not necessary for use in the case[.]" *Monelus*, 609 F. Supp. 2d at 1337 (citing *W&O, Inc.*, 213 F.3d at 621).

Here, Defendant requests $5,653.35 in costs for twelve[1] depositions: (1) Suzie Vazquez, Defendant's corporate representative; (2) Plaintiff; (3) Marilyn Smith-Tuite, Plaintiff's wife; (4) Mark Auerbach; (5) Sumit Kumar Ale; (6) Dr. Aleksander Durovic; (7)

---

[1] Defendant contends that Dr. Upton "necessitated two depositions based on discovery issues [.]" [ECF No. 65, p. 5 n. 1].

4

Mrugeshku Patel; (8) Dr. Paul Agtarap; (9) Dr. Antonio Abbate; (10) Frank Fore; and (11) Dr. Jessica Upton. [ECF No. 65, p. 4]. Defendant states that the first seven depositions listed above were cited to by both parties in Defendant's Motion for Summary Judgment and Plaintiff's Response to that motion. *Id*. The final four depositions (*i.e.* Dr. Paul Agtarap, Dr. Antonio Abbate, Frank Fore, and Dr. Jessica Upton) were "necessarily obtained for use at trial should summary judgment not have been granted by the Court." *Id.* at 5.

Plaintiff's only objection concerns the costs associated with Dr. Upton's deposition. Therefore, he implicitly concedes[2] that the remaining depositions were "relevant to the then pending issues in this case" and "that is all the law requires." *See Monelus*, 609 F. Supp. 2d at 1337.

Plaintiff states that Dr. Upton began treating him for lower back pain *before* he fell on Defendant's ship on March 10, 2022. [ECF No. 69, p. 2]. After March 10, 2022, he did

---

[2]   By not objecting or making any arguments related to the other depositions or costs, Plaintiff consented to Defendant's request by default. *Bell N. Rsch., LLC v. HMD Am., Inc.*, No. 1:22-CV-22706, 2023 WL 8455938, at *3 (S.D. Fla. Nov. 14, 2023), *report and recommendation adopted*, No. 22-22706-CIV, 2023 WL 8449590 (S.D. Fla. Dec. 6, 2023) ("Failure to respond to an argument may result in waiver.") (quoting *West 32nd/33rd Place Warehouse Condo. Ass'n, Inc. v. Western World Ins. Co.*, No. 22-CV-21408, 2023 WL 6317993, at *4 (S.D. Fla. Aug. 21, 2023) (citing *Five for Ent. S.A.,* , 2013 WL 4433420, at *14 ("A failure to address issues in response to a motion is grounds for finding that the claims have been abandoned."); *Altare v. Vertical Reality MFG, Inc.*, No. 19-CV-21496, 2020 WL 209272, at *2 (S.D. Fla. Jan. 14, 2020) ("Plaintiff did not respond to this argument and, consequently, the Court deems any response waived."))).

not see Dr. Upton until February 15, 2023, when he recovered from his incident-related injuries. *Id*. He contends that he "never claimed that his treatment with Dr. Upton was caused by or related to his fall on the cruise ship. Dr Upton was never listed as one of Plaintiff's treating health care providers for injuries related to this case, and Plaintiff never included Dr. Upton's treatment as part of his claimed damages." *Id*.

Judge Scola initially set the deadline for all fact discovery and the exchange of all expert witness summaries/reports[3] for October 11, 2023 and the deadline to complete all expert discovery for November 30, 2023. [ECF No. 12]. After the parties filed a joint motion requesting to extend the discovery deadline, Judge Scola granted it and amended the deadline for completion of fact discovery to October 13, 2023, and created a new, distinct deadline for the exchange of expert witness summaries and reports. [ECF Nos. 20; 21]. The new deadline was October 20, 2023. [ECF No. 21].

Plaintiff argues that Defendant "never attempted to depose Dr. Upton during the time period permitted for fact discovery [, ]" and that neither party "designated Dr. Upton

---

[3] In his Scheduling Orders [ECF Nos. 12; 21], Judge Scola includes the following language related to the exchange of expert witness summaries/reports:

> When a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report. By contrast, treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required. *See*, *Muzaffarr v. Ross Dress for Less, Inc.*, No. 12-61996-CIV, 2013 WL 3850848, at *1 (S.D. Fla. July 26, 2013).

6

as an expert [.]" *Id*. at 3. On November 7, 2023, Defendant "designated Dr. Upton as its **rebuttal** expert," asserting that she "would **rebut** the opinions of Plaintiff's treating cardiologist and orthopedic surgeons." *Id*. (emphasis added).

Plaintiff argues that instead of asking Dr. Upton questions related to the testimony of Plaintiff's disclosed experts during her deposition, Defendant asked questions only "regarding her treatment of Plaintiff's back pain and related symptoms and asked no questions about the treatment provided by or the opinions of Plaintiff's designated expert treating physicians." [ECF No. 69, p. 4].

> It fell to Plaintiff, by counsel, to ask Dr. Upton about the opinions of Plaintiff's treating physicians. When asked, Dr. Upton testified that she did **not dispute any of the opinions of any of Plaintiff's treating physicians**. In turn, that testimony forced Defendant to elicit testimony from Dr. Upton establishing that she had **never even reviewed the deposition transcripts** nor the medical records for any of Plaintiff's treating physicians including his cardiologist and two orthopedic surgeons. Dr. Upton was **completely unaware of the opinions which her Rebuttal Expert Designation claimed she was going to rebut,** and in, fact she did **not hold the opinions that the designation stated that she did.**

*Id*. (citations omitted) (emphasis added).

Plaintiff states that Defendant's use of Dr. Upton was a "transparent attempt to evade the time limitations on fact witness discovery in this case and take a late fact witness deposition without the agreement of Plaintiff or leave of Court." *Id*. Plaintiff argues that"[t]he question of whether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially necessarily obtained for use in this case." *Id*. (quoting *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 621

7

(11th Cir. 2000)). "Deposition costs are not taxable when they are not 'related to an issue which was present in the case at the time the deposition was taken.'" *Id*.

In its reply, Defendant highlighted how, in Plaintiff's expert witness disclosure, "Plaintiff listed all the physicians as intending to opine on 'symptoms, limitations, and/or restrictions documented in [the physician's medical records, or which [the physician] testified, are the results of the injuries sustained in the subject fall [.]'" [ECF No. 72, p. 3]. Defendant contends that its questioning of Dr. Upton during her deposition was in line with its expert disclosure because even though it addressed facts "arising out of Dr. Upton's chiropractic treatment of Plaintiff [,]" it still addressed the issue "that Plaintiff had physical limitations and restrictions immediately prior to the incident." *Id*.

Defendant stated, in a footnote, that it did not ask questions related to the treating physicians' opinions because it was "limited to what was listed in Plaintiff's Expert Witness Disclosure." *Id*.

The Undersigned is unconvinced by Defendant's argument.

First, "addressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Med-X Glob., LLC v. SunMed Int'l, LLC*, No. 19-20722-CIV, 2022 WL 17486303, at *2 (S.D. Fla. Dec. 7, 2022) (quoting *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022)).

Second, "[a] treating source (i.e., a treating physician) is a claimant's own

8

physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment and who has, or has had an ongoing treatment relationship with you." *Nyberg v. Commissioner of Social Security*, 179 F. App'x. 589, 591, n.3 (11th Cir. 2006) (internal citations omitted). "A claimant generally has an 'ongoing treatment relationship' with a physician when medical evidence establishes that the claimant sees or has seen the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s).'" *Elardi v. Royal Caribbean Cruises, LTD*, 340 F.R.D. 607, 611 (S.D. Fla. 2022) (quoting *Nyberg*, F. App'x at 591).

Whether Dr. Upton's testimony was appropriate depends on whether "she testifie[d] about observations based on personal knowledge, including treatment of the party." *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011). "[W]hen a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of *Daubert*." *Id*. at 1317–18.

In its Rebuttal Expert Witness Disclosure, Defendant summarized Dr. Upton's testimony:

> Dr. Upton is expected to provide **rebuttal** opinions to Plaintiff's disclosed Rule 26(a)(2)(C) expert witnesses. In particular, Dr. Upton's opinions will **rebut opinions by Plaintiff's listed treating physicians** who intend to opine on "symptoms, limitations, and/or restrictions documented in [his] medical records, or to which [he] testifies, are the result of the injuries sustained in the subject fall[.]". Dr. Upton is also expected to rebut

> specifically Dr. Abbate's opinions that "Mr. Tuite was very active and independent with ADLs and mobility prior to the incident that took place on March 10, 2022."

[ECF No. 53-1, p. 2 (emphasis added)] (citations omitted).

Expert testimony under Rule 702 is meant to **assist** the trier of fact. Therefore, "expert testimony is admissible if it concerns matters that are **beyond the understanding of the average lay person**." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (emphasis added) (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir.1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen")).

However, when questioning Dr. Upton, Defendant asked questions solely relating to her treatment of Plaintiff *before* the incident. [ECF No. 54-1]. Defendant's questions essentially **review** her treatment records. At no point does Defendant ask questions based on hypothetical scenarios. For example, Defendant could have asked whether someone with Plaintiff's complaints could be very active and independent with ADLs and mobility, how a certain type of injury could aggravate or affect whatever medical issues Plaintiff complained of, or whether Plaintiff's expert witnesses used proper methodology in reaching their opinions. Instead, Defendant asked what Plaintiff complained about during certain visits, how Dr. Upton treated him, and why she chose certain treatment plans. Defendant ***never*** asked Dr. Upton questions related to things she never personally observed.

Defendant argues that Dr. Upton's deposition was "related to an issue present in the case at the time it was taken." [ECF No. 72, p. 4]. Defendant also argues that it timely provided its rebuttal expert disclosure. *Id* at 2. The Undersigned agrees with both of those statements. However, even though the purported rebuttal expert disclosure was timely and the deposition testimony relevant, Defendant's questioning (or lack of questioning) exposed Dr. Upton as a **lay fact witness** in a rebuttal expert's clothing. Because she is *in fact* a fact witness (in disguise), Defendant should have disclosed her and completed her deposition by the fact discovery deadline, *not* the rebuttal expert deadline.

Thus, to the extent that Dr. Upton's deposition testimony rebutted the opinions of other doctors because it explained that Plaintiff was active before the incident, it arises from her status as a fact witness who treated Plaintiff before the incident. Defendant should have revealed her as a fact witness and taken her deposition in compliance with the fact witness deadline.

Plaintiff highlights that Dr. Upton is a chiropractor and lacks the necessary qualifications to properly analyze and evaluate the opinions of Plaintiff's experts -- which include cardiologists and orthopedic surgeons. [ECF No. 69, p. 4]. How could Dr. Upton be expected to legitimately rebut Plaintiff's expert opinions, especially that of Dr. Abbate, when (1) she practices in a different medical field; (2) she did not review the relevant deposition transcripts or expert findings; (3) Defendant never asked her questions related to other medical opinions; and (4) she did not dispute any of Plaintiff's experts (likely

11

because she never reviewed any of their records)?

Even if Defendant's questions were limited to what Plaintiff included in his expert disclosures, then its failure to provide Dr. Upton with any of Plaintiff's expert discovery undermines her so-called designation as a rebuttal expert. Dr. Upton could not be expected to rebut Plaintiff's expert's opinions without knowing what those opinions are in this case. Dr. Upton's deposition supports the conclusion that Defendant *mislabeled* her as a rebuttal witness (when she was actually there as a fact witness, to answer questions related to her involvement with Plaintiff's chiropractic treatment as a treating doctor before the incident at issue occurred):

> [Plaintiff's Counsel] Q: So let me ask you specifically, is there any opinion of [Plaintiff's] treating shoulder surgeon, Dr. Boardman, that you dispute?
>
> [Dr. Upton] A: No.
>
> Q: Is there any opinion of Bob Tuite's treating hand surgeon, Dr. Frankenhoff, that you dispute?
>
> A: No.
>
> Q: Is there any opinion of Bob Tuite's treating cardiologist, Dr. Abbate, that you dispute?
>
> A: No.
>
> Q: Is there any opinion of any treating physician of [Plaintiff] that you dispute?
>
> A: No.

<div align="center">***</div>

> [Defendant's Counsel] Q: [Plaintiff's Counsel] also asked you whether you were going to be specifically rebutting opinions by certain treating physicians within the case. Have you read the deposition transcripts of any of those treating physicians?
>
> [Dr. Upton] A: No.
>
> Q: Have you read any medical records from Dr. Boardman or Dr. Frankenhoff whatsoever?
>
> A: No.

[ECF No. 54-1, p. 10].

Yes, Dr. Upton's fact-based testimony may have, in effect, rebutted the opinions of other experts, but in determining whether she is a fact witness or a rebuttal expert for purposes of deciding whether Defendant should have disclosed her as a fact witness and taken her deposition as a fact-type treating doctor, she is **not** a rebuttal expert.

Moreover, Dr. Upton's testimony, together with Defendant's invoices, illustrate a scenario where Defendant's legal counsel barely spoke with her. In fact, based on Dr. Upton's testimony, she spoke with Defendant's counsel for only approximately ten minutes (the day before her deposition) to prepare for her deposition as a so-called rebuttal expert. [ECF No. 54-1, p. 3].

Separate and apart from the motion arguments, Defendant's request should still be denied in part because of problematic entries related to Dr. Upton's depositions. Defendant initially subpoenaed Dr. Upton for a deposition to occur on November 10, 2023. However, Plaintiff had that subpoena quashed, leading Defendant to schedule a

13

discovery hearing in front of the Undersigned, who granted Defendant permission to take Dr. Upton's deposition. Dr. Upton's actual deposition occurred on December 7, 2023. The following invoice relates to cancelled deposition:

| Services/Items | Units | Type | Rate | Charges |
|---|---|---|---|---|
| Items Covered: General | | | | |
| Waiting Time | 1.00 | Hours | $97.50 | $97.50 |
| Appearance Fee - First Hour | 1.00 | N/A | $95.00 | $95.00 |
| ORIGINAL TRANSCRIPT OF: Jessica Anne Upton, DC | | | | |
| Original | 25.00 | Pages | $5.50 | $137.50 |
| 5 Business Day Expedite | | | | $82.50 |
| Transcript Handling & Processing | 1.00 | N/A | $45.00 | $45.00 |
| Expert/Technical Pages | 20.00 | Pages | $0.60 | $12.00 |
| ***Corrected invoice - Replaces invoice 20230553220-12*** | Total Due | | | $469.50 |
| | AFTER 12/31/2023 PAY | | | $469.50 |
| | (-) Payments/Credits | | | $0.00 |
| | (+) Finance Charges/Late Fees | | | $0.00 |
| | (=) New Balance | | | $469.50 |

[ECF No. 65-2, p. 7].

Defendant failed to provide any reasoning explaining how a **cancelled** deposition could produce so many pages of material or why it needed to have this transcript expedited. The Undersigned "cannot find that this (cancelled) deposition of [Defendant's Rebuttal Expert Witness] was necessarily obtained for use in the case, and therefore," declines to agree with Defendant's argument that it is entitled to *all* of its requested costs. *See Thorne v. Commonwealth Fin. Sys., Inc.*, No. 10-20257-CIV, 2013 WL 12342350, at *7 (S.D. Fla. June 5, 2013), *report and recommendation adopted*, No. 10-20257-CIV, 2013 WL 12342296 (S.D. Fla. July 3, 2013).

Defendant's request for the process server fees related to Dr. Upton is equally as problematic because it includes $315.00 worth of rush fees.

| Date Served | Servee | Quantity | Price | Amount | Amount Due |
|---|---|---|---|---|---|
| 11/7/2023 | JESSICA A. UPTON, DC NEW LIFE CHIROPRACTIC, PLLC | | | | $315.00 |
| | Service Fee (NATIONWIDE) | 1.00 | 105.00 | 105.00 | |
| | Rush Fee | 1.00 | 105.00 | 105.00 | |
| | SAME DAY RUSH | 1.00 | 105.00 | 105.00 | |
| 12/1/2023 | JESSICA A. UPTON, DC NEW LIFE CHIROPRACTIC, PLLC | | | | $210.00 |
| | Service Fee (NATIONWIDE) | 1.00 | 105.00 | 105.00 | |
| | Rush Fee | 1.00 | 105.00 | 105.00 | |
| | TOTAL CHARGED: | | | $525.00 | |
| | **TOTAL AMOUNT DUE** | | | | **$525.00** |

[ECF No. 65-3, p. 1].

28 U.S.C. § 1920 does not include rush fees as a taxable cost. *Rodriguez v. Geovera Specialty Ins. Co.*, No. 18-23585-CIV, 2020 WL 2732337, at *2 (S.D. Fla. May 26, 2020); *Dewitt v. Daley*, No. 05-61418-CIV, 2007 WL 9698322, at *7 (S.D. Fla. Nov. 29, 2007), *report and recommendation adopted*, 2007 WL 9698332 (S.D. Fla. Dec. 17, 2007); *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 650 (S.D. Fla. 2007).

In addition, although private process server fees may be taxed, they cannot exceed the standard hourly rate the U.S. Marshals Service charges for serving a document. "[T]he United States Marshals Service shall routinely collect fees of $65.00 per hour for process served or executed personally for each item served, plus travel costs and out-of-pocket expenses. Therefore, to the extent [a party] may recover any of its service fees, it is limited to $65.00 per hour." *Id.* (quoting *Arnold v. Heritage Enterprises of St. Lucie, LLC*, No. 13-14447-CIV, 2017 WL 8794776, at *2 (S.D. Fla. Sept. 21, 2017), *report and recommendation*

*adopted*, No. 13-14447-CIV, 2018 WL 1795446 (S.D. Fla. Jan. 11, 2018)).

All in all, the Undersigned agrees with Plaintiff's argument that Dr. Upton's expert designation was a strategic attempt to "take a late fact witness deposition without the agreement of Plaintiff or leave of Court." [ECF No. 69, p.5]. Therefore, Defendant should not be entitled to an award of costs related to Dr. Upton's deposition.

## IV. Conclusion

For reasons discussed, and without objection from Plaintiff, the Undersigned **respectfully recommends** that the District Court **grant** Defendant's motion to tax costs **in part** and award it **$3,721.05** in taxable costs, plus interest (i.e., $1,932.30 less than requested).

## V. Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the

parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, March 26, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola Jr.
All Counsel of Record